ATTORNEYS FOR APPELLANT
Bernice A. N. Corley
Ruth A. Johnson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Joseph Y. Ho
James B. Martin
Ellen H. Meilaender
Deputy Attorneys General
Indianapolis, Indiana



FILED
Nov 05 2012, 5:18 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1204-CR-234

ELMER J. BAILEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G17-1101-FD-4920
The Honorable Clark Rogers, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1106-CR-487

**November 5, 2012**

**Massa, Justice.**

When a husband shoves his wife and pokes her in the forehead repeatedly, causing her pain, is that pain alone sufficient evidence to prove the "bodily injury" element of the husband's conviction for domestic battery? One panel of the Indiana Court of Appeals thought not, but we disagree.

## Facts and Procedural History

In 2011, Elmer and Farrenquai Bailey had been married for eleven years and in a relationship for another nine years prior to that. On the evening of January 22, 2011, Elmer came home from work and began drinking with Farrenquai. Each consumed about three beers. Farrenquai testified that Elmer then began threatening her, calling her vulgar names, and "putting his hands on [her]." Tr. at 7. He poked her repeatedly in the forehead with his finger, hard enough to push her head back. Farrenquai testified that this contact caused her pain. She eventually called the police, and Elmer left.

The police arrived at the Baileys' home, and while the officers were present, Elmer called Farrenquai on her phone three times. Each time, the police spoke to him. After the police left, Elmer returned to the house, shoving Farrenquai out of the way to get inside. She testified that this shove hurt as well. He became verbally abusive again, and Farrenquai called the police a second time.

The police returned to the Baileys' home, instructed Elmer to leave, and directed Farrenquai to lock the door so that Elmer could not re-enter. Minutes after the police departed, Elmer returned, and Farrenquai unlocked the door because she feared Elmer would kick it down or break a window to get back in. Again, Elmer began verbally abusing Farrenquai and poking her in the head, causing her pain. When Farrenquai called the police a third time, they returned and again instructed Elmer to leave. Farrenquai then asked the officers, "How you going to keep letting him just leave. And he'll come back. What's going to have to happen? Somebody going to have to get hurt?" Tr. at 13. At that point, the officers arrested Elmer.

Elmer was charged with battery and domestic battery, both as class A misdemeanors.[1] Both charges were enhanced to class D felonies because Elmer had previously been convicted of domestic battery against Farrenquai.[2] At his bench trial, the only evidence put forth by the State in support of either charge was Farrenquai's testimony. Elmer denied putting his hands on Farrenquai in any way and specifically denied poking her in the forehead and shoving her. The judge found Elmer guilty of domestic battery and sentenced him to two years in prison.[3]

Elmer appealed, and the Court of Appeals reversed in an unpublished decision. Bailey v. State, No. 49A02-1106-CR-487, 2012 WL 360735, slip op. at 9 (Ind. Ct. App. Feb. 3, 2012). The court first held that, in order for Farrenquai to have suffered "bodily injury" sufficient to justify Elmer's conviction, her pain "must be sufficient to rise to a level of 'impairment of physical condition.'" Id. at 7 (quoting Ind. Code § 35-41-1-4 (2008) (recodified at § 35-31.5-2-29) (2012)).[4] It then found that Farrenquai's testimony was insufficient evidence of this requirement. Id. at 9.[5]

Six days later, a different panel of the Court of Appeals presented a different view of what level of pain constitutes "bodily injury" under Indiana's criminal provisions, this time in a

---

[1] Ind. Code §§ 35-42-2-1(a)(1)(A) (2008 & Supp. 2011), -1.3(a)(1) (2008).

[2] See Ind. Code §§ 35-42-2-1(a)(2)(D), -1.3(b)(1)(A). The State and Elmer stipulated to the existence of this prior conviction.

[3] The judge found him not guilty of battery on double jeopardy grounds.

[4] As we discuss later, the recodification made no substantive change to the statute, and so for the reader's benefit we cite to the current version of the statute through the remainder of this opinion.

[5] Because it found the evidence was insufficient to sustain Elmer's conviction, the Court of Appeals did not address the second issue of his appeal: the appropriateness of his sentence. Bailey, slip op. at 9 n.6.

3

published decision. <u>Toney v. State</u>, 961 N.E.2d 57, 59 (Ind. Ct. App. 2012).[6] Because "bodily injury" is a concept that arises in a number of ways throughout Indiana's criminal code, we granted transfer in <u>Bailey</u> to clarify its meaning, thereby vacating the unpublished decision of the Court of Appeals.[7] <u>Bailey v. State</u>, 967 N.E.2d 1033 (Ind. 2012) (table); Ind. Appellate Rule 58(A).

### Farrenquai's Testimony Was Sufficient to Sustain Elmer's Conviction.

Elmer first argues that the evidence is insufficient to support his conviction for domestic battery. When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. <u>Wright v. State</u>, 828 N.E.2d 904, 905–06 (Ind. 2005). The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. <u>Rohr v. State</u>, 866 N.E.2d 242, 248 (Ind. 2007). "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." <u>Davis v. State</u>, 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a

---

[6] Toney's burglary charge was enhanced to a class A felony because Toney grabbed a phone from the victim's hand, causing pain. <u>See</u> <u>Toney</u>, 961 N.E.2d at 58. The <u>Toney</u> panel, in rejecting Toney's challenge based on the sufficiency of the evidence, said that "[u]nfortunately for Toney, Indiana Code section 35-41-1-14 (2004) defines 'bodily injury' as 'any impairment of physical condition, *including physical pain*.'" <u>Id.</u> at 59 (emphasis in original). Even though the victim suffered only "a fleeting or momentary pain," the court said, "the statutory definition of bodily injury is clear and unambiguous. It contains no requirement that the pain be of any particular severity, nor does it require that the pain endure for any particular length of time. It must simply be *physical* pain." <u>Id.</u> (emphasis in original).

[7] We heard oral argument in this matter on June 19, 2012, in the Supreme Court courtroom. We commend and thank counsel for both parties for their excellent advocacy.

single witness, even when that witness is the victim. Ferrell v. State, 565 N.E.2d 1070, 1072–73 (Ind. 1991).

Indiana's domestic battery statute provides that "[a] person who knowingly or intentionally touches an individual who . . . is or was a spouse of the other person . . . in a rude, insolent, or angry manner that results in bodily injury to the person . . . commits domestic battery, a Class A misdemeanor." Ind. Code § 35-42-2-1.3(a)(1). The offense is elevated to a class D felony if the accused has a prior domestic battery conviction. Ind. Code § 35-42-2-1.3(b)(1). A lesser-included offense for domestic battery is simple battery, a class B misdemeanor which has only the elements that the accused "knowingly or intentionally touches another person in a rude, insolent or angry manner." Ind. Code § 35-42-2-1(a). There is no bodily injury requirement for simple battery.[8] Bodily injury, in turn, is defined by statute as "any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29.

Elmer specifically argues that there was insufficient evidence that Farrenquai suffered bodily injury as a result of the poking and shoving.[9] Elmer acknowledges that Indiana courts

---

[8] If bodily injury results, however, the offense is elevated to a class A misdemeanor just as it was in Elmer's original charges. Ind. Code § 35-42-2-1(a)(1)(A). "Bodily injury" also exists as an aspect of a number of other criminal provisions. See, e.g., Ind. Code §§ 35-42-2-2 (2008) (element of criminal recklessness), -3-3 (2008) (enhancement to criminal confinement), -5-1 (2008) (enhancement to robbery), and Ind. Code §§ 35-43-1-1 (2008) (enhancement to arson and arson for hire), -2-1 (2008) (enhancement to burglary), -4-2 (Supp. 2011) (enhancement to theft), and Ind. Code §§ 35-44.1-3-1 (2012) (enhancement to resisting law enforcement), -3-4 (2012) (enhancement to escape), -4-7 (2012) (enhancement to misleading a firefighter), and Ind. Code § 35-46-1-4 (2008) (enhancement to neglect of a dependent).

[9] Though Elmer denied committing any of those acts at trial, on appeal he appears to concede that the touching occurred: "the evidence presented does support the finding that Bailey touched Ms. Bailey in a 'rude, insolent, or angry manner' which would support the lesser included offense of battery as a Class B misdemeanor." Appellant's Br. at 10. Still, the existence of the bodily injury element is critical to his appeal because without it he could not be convicted of a class D felony under either the battery or domestic battery statutes. His sentence would be, at most, for a class B misdemeanor.

have held that to find bodily injury, "it is enough that the evidence shows that a person experienced physical pain, even if no permanent or lingering injuries were sustained." Appellant's Br. at 9 (citing Mathis v. State, 859 N.E.2d 1275, 1281 (Ind. Ct. App. 2007)). But he argues that when compared to the facts of other cases addressing bodily injury, Farrenquai's testimony that it hurt when she was poked in the forehead and shoved was insufficient.

The State, by its turn, argues that "[t]he law does not require the pain Farrenquai suffered to be uncommon, excruciating, or extraordinary." Appellee's Br. at 5. Farrenquai's testimony as to the pain she felt from Elmer's shoves and pokes is sufficient to sustain his conviction, the State says, because "the language of the statute is clear—pain is bodily injury." Appellee's Br. at 7.

Thus, though Elmer's argument sounds as one claiming the evidence was insufficient to support the verdict, it has spurred a question of statutory interpretation with respect to Indiana Code § 35-41-1-4's definition of bodily injury. Specifically, is pain alone—regardless of severity or duration—sufficient to constitute an impairment of physical condition, or must the pain first rise to some unstated level?

The unpublished opinion of the Court of Appeals created just such a threshold requirement by rejecting the premise that "any level of physical pain, no matter how slight and fleeting, constitutes bodily injury." Bailey, slip op. at 5. Rather, it concluded that "for physical pain to constitute bodily injury for purposes of Indiana Code Section 35-41-1-4, the physical pain must be sufficient to rise to a level of 'impairment of physical condition.'" Bailey, slip op. at 7. It did not dispute that Farrenquai suffered pain as a result of Elmer's conduct, but compared Elmer's conduct (and the resulting effects on Farrenquai) with the conduct of the defendants in other "bodily injury" cases and the resulting effects on those victims. After finding the defendants' conduct in those other cases resulted in a comparatively higher degree of injury to their respective victims, the Court of Appeals weighed Farrenquai's pain, measured it, and found it wanting.

We think this is the wrong approach. Nothing in our prior treatment of this statute implies such a hurdle, despite the facts of the particular cases. Rather, our prior treatment establishes a structure that mirrors statutes from other states and the Model Penal Code by creating a very low threshold for "bodily injury" while maintaining a much more rigorous standard for "serious bodily injury."

**A. Under Our Precedent, Any Physical Pain is Enough to Constitute Bodily Injury.**

We begin just a few years after the bodily injury statute was enacted, with our decision in Rogers v. State, 272 Ind. 65, 396 N.E.2d 348 (1979). Rogers and several accomplices robbed a store in Evansville, Indiana. In the process, Rogers knocked a patron down and kicked him, causing bruises to the patron's head and ribs. For this conduct, Rogers was charged with robbery resulting in bodily injury. The bodily injury enhancement upgraded the base robbery charge, a class C felony with a five-year sentence, to a class A felony with a thirty-year sentence. Rogers's appeal challenged the bodily injury definition as being unconstitutionally vague. We rejected this challenge, saying

> *We can think of no phenomenon of more common experience and understanding than the concepts of "bodily injury" and "physical pain."* Likewise, we do not find the concept of "impairment of physical condition" to be so esoteric as to avoid a consensus of meaning among persons of common intelligence.

Id. at 70, 396 N.E.2d at 352 (emphasis added).[10]

---

[10] We also rejected a challenge that a sentence based on the enhancement was cruel and unusual punishment, in violation of the Eighth Amendment. Rogers, 272 Ind. at 69, 396 N.E.2d at 351.

Next we decided Lewis v. State, 438 N.E.2d 289 (Ind. 1982), a case involving the attempted rape of a woman on her way to work. Lewis lured the victim into his car, took her to his mobile home, and dragged her inside. Once there, he sexually assaulted her, including slapping and shoving her several times. A jury found him not guilty of attempted rape but guilty of the lesser-included offense of battery with bodily injury. The bodily injury enhancement elevated the offense to a class A misdemeanor.

Lewis appealed, arguing that there was no evidence of bodily injury. We affirmed, noting that the victim was dragged from the car, slapped, and shoved. This was enough, we said, for the jury to infer that the victim suffered physical pain because "[i]t is not necessary that some physical trauma to the body be shown. *It is sufficient that the victim experienced physical pain by Defendant's action.*" Id. at 294 (emphasis added).

And in 1988 we decided Gebhart v. State, 525 N.E.2d 603 (Ind. 1988), in which a charge of burglary was elevated to a class A felony because it resulted in bodily injury. Gebhart had been in the process of burglarizing a home when the homeowner and a friend entered; an altercation ensued, and the friend hit his head on a concrete porch. A jury found Gebhart guilty of the elevated burglary charge. On appeal, Gebhart argued that the evidence was insufficient to sustain a conviction on that charge because there was no bodily injury.

Again we affirmed, pointing out that though the victim did not need medical treatment, he did suffer a headache for several days and physical pain. This was sufficient to support the jury's finding because "[m]edical treatment, bloodshed or visible wounds are not necessary to a finding of bodily injury. The degree of injury is a question of fact for the jury." Id. at 604. "The statutory definition of bodily injury includes *any* injury causing physical pain." Id. (emphasis added).

From this one can see that, despite our prior cases all seeming to have higher levels of injury to the victims, we have never said a *particular* level of pain is required in order to rise to

8

the level of impairment of physical condition and thus satisfy the definition of bodily injury. Rather, we think the proper reading of Indiana's statute, and those cases, is that physical pain *is* an impairment of physical condition.[11]

## B. Our Application Comports With That of Other States.

We find further support for our interpretation in a comparison of our statutes to the laws of other states. From this comparison, we find that states codifying a definition of bodily injury (or bodily harm, physical injury, or some similar phrase) fall primarily into two camps: those whose statutes make clear that any level of pain can constitute bodily injury, and those whose statutes are explicit in that pain must rise to a particular threshold before satisfying the definition of bodily injury. While Indiana's statute falls somewhere in between, our application has clearly been in line with those states in the first camp.

### 1. Camp One: *Any* Pain Is "Bodily Injury"

The first camp consists of those states in which the statutory language clearly shows that pain alone (of any grade) can constitute a bodily injury distinct from physical impairment. See Alaska Stat. § 11.81.900(b)(46) (2010) ("'physical injury' means a physical pain or an impairment of physical condition"); Colo. Rev. Stat. § 18-1-901(3)(c) (2011) ("'Bodily injury' means physical pain, illness, or any impairment of physical or mental condition."); Conn. Gen. Stat. § 53A-3(3) (2007 & Supp. 2012) ("'Physical injury' means impairment of physical

---

[11] Nor is our interpretation new. See Hanic v. State, 406 N.E.2d 335, 338 (Ind. Ct. App. 1980) ("With the above statutory construction guidelines in mind, we emphasize that Ind. Code § 35-41-1-2, *supra*, defining bodily injury, uses the language '*any* physical impairment.' . . . Within the same statute, it can reasonably be construed that the clause 'including physical pain' modifies impairment. *That is, bodily injury includes any physical impairment, and physical pain is considered a physical impairment under the statute*." (second emphasis added)).

condition or pain"); Haw. Rev. Stat. § 707-700 (1993) ("'Bodily injury' means physical pain, illness, or any impairment of physical condition."); Me. Rev. Stat. tit. 17-A, § 2(5) (2006 & Supp. 2011) ("'Bodily injury' means physical pain, physical illness or any impairment of physical condition."); Minn. Stat. § 609.02, subd. 7 (2009 & Supp. 2012) ("'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition."); Mont. Code Ann. § 45-2-101(5) (2011) ("'Bodily injury' means physical pain, illness, or an impairment of physical condition and includes mental illness or impairment."); Neb. Rev. Stat. § 28-109(4) (2008) ("Bodily injury shall mean physical pain, illness, or any impairment of physical condition"); N.J. Stat. Ann. § 2C:11-1(a) (2005) ("'Bodily injury' means physical pain, illness or any impairment of physical condition"); R.I. Gen. Laws § 12-29-3(b)(1)(iii) (2002) ("'Bodily injury' means physical pain, illness, or an impairment of physical condition"); Tenn. Code Ann. § 39-11-106(a)(2) (2010 & Supp. 2011) ("'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty"); Texas Penal Code Ann. § 1.07(a)(8) (2011 & Supp. 2012) ("'Bodily injury' means physical pain, illness, or any impairment of physical condition."); Utah Code Ann. § 76-1-601(3) (2008) ("'Bodily injury' means physical pain, illness, or any impairment of physical condition."); Vt. Stat. Ann. tit. 13, § 1021(1) (2009) ("'Bodily injury' means physical pain, illness or any impairment of physical condition."); Wash. Rev. Code § 9A.04.110(4)(a) (2009 & Supp. 2012) ("'Bodily injury,' 'physical injury,' or 'bodily harm' means physical pain or injury, illness, or an impairment of physical condition"); Wis. Stat. § 939.22(4) (2005 & Supp. 2012) ("'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition."); Wyo. Stat. Ann. § 6-1-104(a)(i) (2011) ("'Bodily injury' means physical pain, illness or any impairment of physical condition").

The common-sense reading of these broadly phrased statutes is that physical pain is a stand-alone qualification for bodily injury—distinct from impairment of physical condition. Cf. State v. Johnson, 152 N.W.2d 768, 773 (Minn. 1967) ("While there was no proof of permanent or serious injury, certainly the jury could find that the victim suffered physical pain, which is all the statute requires."); State v. Melton, 477 N.W.2d 154, 156 (Neb. 1991) ("Physical pain is a

10

bodily injury as defined by Neb. Rev. Stat. § 28-109(4) (Reissue 1989)."); Morales v. State, 293 S.W.3d 901, 907 (Tex. Crim. App. 2009) ("This 'purposefully broad' definition of 'bodily injury' includes physical pain from 'even relatively minor physical contacts so long as they constitute more than a mere offensive touching.'" (quoting Wawrykow v. State, 866 S.W.2d 87, 89 (Tex. App. 1993)). Plainly, courts in those states think the same.

These states' statutes also parallel language included in the Model Penal Code's assault provision, which incorporates the common law crimes of both assault and battery into "a single integrated provision," wherein grading of the offense is done only "according to the gravity of harm intended or caused and the dangerousness of the means used."[12] Model Penal Code § 211.1 cmt. 2 (1980). The provision identifies two categories of resulting harm: bodily injury and serious bodily injury. See Model Penal Code § 211.1(1), (2) (simple assault and aggravated assault).

Bodily injury is defined as "physical pain, illness, or any impairment of physical condition," Model Penal Code § 210.0(2), and "includes more than the consequences of direct attack. It also covers pain, illness, or physical impairment caused indirectly . . . ." Model Penal Code § 211.1 cmt. 3.[13] The minimum floor, as it were, is simply "the fact or prospect of physical injury." Model Penal Code § 211.1 cmt. 2. "Mere offensive contact" and "wrongs based solely upon insult or emotional trauma" are excluded because they can be punished under other

---

[12] In Indiana, unlike many states, assault no longer exists as a separate statutory crime. Rather, it is conceptually subsumed under the general attempt statute as applied to an offense of battery. See generally Henderson v. State, 534 N.E.2d 1105, 1108 (Ind. 1989) (discussing Criminal Law Study Commission's commentary on redundancy of separate assault statute).

[13] The MPC definition was, in fact, drawn from the statutory definition of bodily injury used by Wisconsin. See Model Penal Code § 211.1 cmt. 3 n.58.

substantive provisions, and "[t]he principle thrust of Section 211.1 is to reach the infliction of physical injury." Model Penal Code § 211.1 cmts. 2–3.

"[S]erious bodily injury," by contrast, is reserved for "[p]hysical harm of special gravity." Model Penal Code § 211.1 cmt. 3. It encompasses bodily injury of such high degree that it "creates a substantial risk of death or . . . causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. (quoting Model Penal Code § 210.0(3)). Accordingly, the Model Penal Code recommends only a misdemeanor for conduct resulting in bodily injury, but a felony for conduct resulting in serious bodily injury. "This differential is appropriate in light of *the very broad coverage achieved under the lesser requirement* and the extreme gravity of injury punished under the greater." Id. (emphasis added).

As we see it, Indiana uses a similar two-tier grading structure for batteries that result in physical injury. The top tier is reserved for that extreme conduct falling within the statutory definition of serious bodily injury. See Ind. Code § 35-31.5-2-292 (2012) ("'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus.") and Ind. Code § 35-42-2-1(a)(3) (class C felony when battery results in serious bodily injury); see also Ind. Code § 35-42-2-1.5 (2008) (aggravated battery requires proof that person "knowingly or intentionally inflicts injury" creating "a substantial risk of death or caus[ing] (1) serious

12

permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus").[14]

Any *other* battery resulting in physical injury must fall into a lower tier that is necessarily much broader. Thus, while Indiana's statutory text does not directly mirror the language of these states' provisions or the Model Penal Code (and there is no apparent explanation for the particular language chosen by the General Assembly, nor for its variance), our interpretation creates a similar application.[15]

## 2. Camp Two: Only "Substantial" Pain Is "Physical Injury"

Examination of the second camp of states—those in which physical pain can only constitute bodily injury if it crosses a given threshold of severity—reinforces our conclusion. In these statutory provisions, the required threshold is stated clearly and unequivocally by the elected bodies of those states. See, e.g., Ala. Code § 13A-1-2(12) (2005) ("Physical Injury. Impairment of physical condition or *substantial* pain."); Ark. Code Ann. § 5-1-102(14) (2006 &

---

[14] This same tiered structure can also be found in a number of the other statutory schemes we detailed in footnote 8, supra, that rely on bodily injury as an element or an enhancement.

[15] And there is nothing in the language the General Assembly selected that is so singularly significant as to overcome our conclusion that we (ultimately) use the same approach as both the Model Penal Code and the states we cite above.

We found only one state—North Dakota—that has a statutory definition of bodily injury phrased like our own. See N.D. Cent. Code § 12.1-01-04(4) (2012). And North Dakota's courts also interpret their statute to mean that physical pain, and nothing more, is sufficient to prove bodily injury—with no requirement that the pain rise to a particular grade or severity. See, e.g., State v. Morales, 673 N.W.2d 250, 256–57 (N.D. 2004) (defendant guilty of simple assault on police officer, of which bodily injury is an element, when State showed defendant "willfully engaged in activity resulting in physical pain to one or more of the officers" by testimony that defendant threw coffee mug at officer, causing some undefined amount of pain); see also Simons v. State Dep't of Human Servs., 803 N.W.2d 587, 593 (N.D. 2011) (reaffirming that Morales held physical pain alone satisfies definition of bodily injury).

Supp. 2011) ("'Physical injury' means the: (A) Impairment of physical condition; (B) Infliction of *substantial* pain; or (C) Infliction of bruising, swelling, or a visible mark associated with a physical trauma"); Cal. Penal Code § 243(f)(5) (2008 & Supp. 2012) ("'Injury' means any physical injury *which requires professional medical treatment*."); Del. Code Ann. tit. 9, § 920(8) (2011) ("'Physical injury' shall mean impairment of physical condition or *substantial* pain."); Ky. Rev. Stat. Ann. § 500.080(13) (2008) ("'Physical injury' means *substantial* physical pain or any impairment of physical condition"); Md. Code Ann., Crim. Law, § 3-203(c)(1) (2012) ("'physical injury' means any impairment of physical condition, *excluding minor injuries*."); N.Y. Penal Law § 10.00(9) (2009) ("'Physical injury' means impairment of physical condition or *substantial* pain."); Or. Rev. Stat. § 161.015(7) (2012) ("'Physical injury' means impairment of physical condition or *substantial* pain."); W. Va. Code § 61-2-9a(f)(1) (2010) ("'Bodily injury' means *substantial* physical pain, illness or any impairment of physical condition") (emphasis added in all). Such express language is absent from Indiana's definition.

On that note, it is significant that the definition of bodily injury has been on the books in Indiana for more than thirty-five years. See Act of February 25, 1976, P.L. 148-1976, § 1, 1976 Ind. Acts 719. And though the General Assembly recodified the definition in 1983 (and despite our extensive treatment of it in the broad fashion we describe above), the definition itself has never been modified or substantively amended. Compare id., with Ind. Code § 35-41-1-4; see also Act of April 22, 1983, P.L. 311-1983, § 5, 1983 Ind. Acts 1886.[16] Certainly, had the General Assembly disapproved of our approach and desired to create a threshold standard for physical pain, it could have done so. In the absence of such a change, we think it fair to infer a persuasive degree of legislative acquiescence with respect to our approach, cf. Ind. Bell Tel. Co.

---

[16] Effective July 1, 2012, this provision was recodified again to Indiana Code § 35-31.5-2-29, but the definition remains the same. See Act of March 19, 2012, P.L. 114-2012, § 67, 2012 Ind. Acts 1766.

v. Ind. Util. Regulatory Comm'n, 715 N.E.2d 351, 358 (Ind. 1999), though certainly the legislature may still opt to draw this very distinction in the future.

But for now, our decisions create a logical and definable mechanism with which to apply the fact of a victim's pain in the context of criminal charges that turn on the existence and severity of bodily injury.

## C. Bright Line Preferred

Our holding today settles a question of statutory interpretation about which reasonable minds can differ. We choose this approach, in part, because we believe the alternative—requiring physical pain to rise to a particular level of severity before it constitutes an impairment of physical condition—could bring uncertainty to our relatively straightforward statutory structure.[17] Indeed, the holding below does not define the level of pain needed to support the enhancement; instead, it surveys other Indiana cases where the pain was more obviously severe and finds Farrenquai's lacking in comparison. Bailey, slip op. at 8–9. We think engaging in a case-by-case comparison to determine whether a victim's pain is sufficiently significant creates unnecessary challenges not required by the statute.

First, it could unfairly discount the suffering of certain victims who may have a lower pain tolerance than others, which runs counter to the long-standing rule of both criminal and tort

---

[17] We acknowledge that there is no bright-line test to distinguish between pain and extreme pain—between bodily injury and serious bodily injury. Mendenhall v. State, 963 N.E.2d 553, 569 (Ind. Ct. App. 2012), trans. denied (citing Davis v. State, 813 N.E.2d 1176, 1178 (Ind. 2004)). Nevertheless, we agree with the Court of Appeals in Vaillancourt v. State, when it held that "the term 'extreme pain' is not one which persons of average intelligence cannot understand." 695 N.E.2d 606, 610 (Ind. Ct. App. 1998), trans. denied. And at least we can now provide one bright-line test for bodily injury: there either is physical pain or there is not.

law that a defendant takes his victim as he finds him. See Defries v. State, 264 Ind. 233, 244–45, 342 N.E.2d 622, 630 (1976) ("On the other hand, if one throws a piece of chalk at the legendary victim with an eggshell skull, and the chalk strikes the victim and fractures his skull, the perpetrator would be guilty under our statute even though he did not intend to do great bodily harm."); cf. Alexander v. Scheid, 726 N.E.2d 272, 284 (Ind. 2000) (defendant liable for "aggravation or exacerbation of a current injury"). Though they may have a greater sensitivity to pain, these individuals are no less victims than someone who may be more tolerant.

Second, it excuses from punishment conduct that is covered under the language of the statute. Though we construe criminal statutes strictly against the State, "a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature." State v. Bigbee, 260 Ind. 90, 93, 292 N.E.2d 609, 611 (1973). Following the Bailey panel's approach could create a gap in which some batterers inflict pain—up to an undefined degree—and face only a B misdemeanor. We do not believe this was what the General Assembly intended.

Nor does our approach read "impairment of physical condition" out of the statutory definition or render it superfluous. See Bailey, slip op. at 6. Instead, if one reasonably considers an "ideal" physical condition as that of an uninjured, healthy, pain-free, and unencumbered person, then physical pain would necessarily impair that physical condition—maybe in only a small way, but the statute expressly says "*any* impairment of physical condition." Ind. Code § 35-41-1-4 (emphasis added). It does not require that the impairment be significant or severe.

We do acknowledge that our approach—that a defendant commits a battery at his peril; that any degree of physical pain may constitute a bodily injury and thus enhance punishment— may raise the specter of witness coaching, whereby a victim is encouraged to say "it hurt" when, in actuality, it did not. Or that a victim may simply claim pain to enhance a charge against a defendant—a particular danger in the arena of domestic violence, where there often can only be two witnesses (the accused and the accuser), the disputes are emotionally charged and deeply

16

personal, and trials can thus literally boil down to a heated "he said/she said." But those are challenges of witness credibility, not statutory construction, and they are not new to criminal litigation. They are largely addressed through zealous advocacy and effective cross-examination.

Here, Farrenquai testified that she was shoved and repeatedly poked in the forehead and that each of these acts caused her pain. Her testimony was not uncontroverted. For one thing, Elmer denied putting his hands on Farrenquai in any way, creating a clear conflict between two witnesses. Furthermore, Farrenquai also testified that she asked the responding officers (after the pushing and poking) if someone was going to have to get hurt before they arrested Elmer, creating a potential inference that she had not been hurt before that point. Finally, Farrenquai testified that both she and Elmer had been drinking that night, which might lead to the inference that neither witness had a full and clear memory of the events.

Weighing it all, Judge Rogers chose to believe Farrenquai's testimony that Elmer both battered her and the battery caused her physical pain. As we said above, under review for sufficiency of the evidence we will not reweigh evidence—even if conflicting—and we will leave undisturbed a trier of fact's assessment of witness credibility. Here, when viewing the evidence in the light most favorable to his conviction, there is substantial and sufficient evidence of probative value that Elmer shoved Farrenquai and poked her in the forehead several times, causing her pain.

### Elmer's Two-Year Sentence Was Appropriate.

Elmer also appeals the appropriateness of his two-year sentence. This court has the power to review and revise a criminal sentence when it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B); see also Ind. Const. art. 7, § 4. On transfer, Elmer points out that his sentence might be served by mid-April 2012.

17

Regardless, Elmer battered Farrenquai while still on probation for a similar offense. He also has a lengthy criminal history that includes eleven prior adult convictions. His two-year sentence was thus appropriate.

## Conclusion

We therefore affirm Elmer Bailey's conviction and sentence.

**Dickson, C.J., Rucker, and David, JJ., concur.**